UNITED STATES of America, Plaintiff,

v.

Thomas A. BURGER, James R. Cruce, Defendants.

Nos. 91–40002–01, 91–40002–03.

United States District Court, D. Kansas.

July 31, 1991.

Lee Thompson, U.S. Atty., Richard L. Hathaway, Asst. U.S. Atty., for U.S.

Dennis W. Moore, Overland Park, Kan., Mark L. Bennett, Jr., Glenda L. Cafer, Bennett, Dillon & Callahan, Topeka, Kan., for defendants.

## MEMORANDUM AND ORDER

SAFFELS, District Judge.

This matter is before the court on the motion of defendant Thomas A. Burger ("defendant Burger") and defendant James R. Cruce ("defendant Cruce"). Defendants move the court to apply the United States Sentencing Guidelines ("USSG") effective December 1988, when sentencing defendants in the above-captioned case. Defendants seek to avoid the application of two amendments which went into effect on November 1989, and November 1990. These amendments allow the court to factor in the total amount of loss suffered by a financial institution as a result of the offense and to also factor in whether the offense has substantially jeopardized the

safety and soundness of a financial institution. *See* USSG § 2F1.1(b)(1)(S) and (6). In the alternative, Burger and Cruce move the court to allow them to withdraw their guilty pleas.

In addition, defendant Cruce asserts that restitution ordered by the court should be limited to those amounts attributable specifically to the conduct underlying his conviction.

On April 17, 1991, defendant Cruce entered a guilty plea to Counts 1, 18, 19, and 20 of the Indictment returned on January 10, 1991. This Indictment charged the defendants with conspiring to obtain monies from Peoples Heritage Federal Savings and Loan ("Peoples Heritage") by false or fraudulent pretenses in violation of 18 U.S.C. § 1344; making false, fictitious and fraudulent statements in violation of 18 U.S.C. § 1001; twenty-three counts of bank fraud in violation of 18 U.S.C. § 1344; and one count of making a false statement in violation of 18 U.S.C. § 1001. In his petition to plead guilty, accepted by the court on April 17, 1991, defendant Cruce stated:

> During the time period from 1984 through 1987, I entered into an agreement with other individuals, including Christopher Hashioka and James Boseler, whereby we set up an arrangement to purchase Ameriwest stock as it became available in large blocks on the open market in an attempt to keep the price of the stock up. At the time we entered into the agreement, I owned shares of the stock and since the stock price was going down it was to my benefit if I could keep the price from going down further. The agreement that we entered into involved a loan of $5,000,000 to James L. Bosler by Peoples Heritage Savings and Loan. Mr. Bosler was to loan the money to third parties so that they could acquire the stock on the open market and keep the price up.

Similarly, defendant Burger entered a plea of guilty to Counts 1, 16, 18, 19 and 20 of the Indictment on April 23, 1991. In his petition, defendant Burger made an identical factual statement, except that defendant Burger's statement also included the following language:

> My participation in any conspiracy terminated at the time I left Peoples Heritage Savings in December, 1988.

Upon satisfying itself that the requirements of Rule 11 of the Federal Rules of Criminal Procedure had been met, and that a factual basis existed to find that the defendants had committed the offenses to which they had pled guilty, the court accepted both defendants' guilty pleas.

## I. APPLICATION OF THE AMENDED GUIDELINES

Defendants now contend that the court should sentence them in accordance with the Sentencing Guidelines in place during November 1988, or in the alternative, allow them to withdraw their guilty pleas to Count 1 of the Indictment. Defendants assert numerous reasons why they should be sentenced in accordance with the Sentencing Guidelines in effect on November 1, 1988. First, defendants contend that there exists no factual basis in the record for the determination that the defendants are guilty of a conspiracy that continued until the return of the Indictment on January 10, 1991. Second, defendants contend that the conspiracy ended with the last overt act alleged in the Indictment. Third, defendants contend that any alleged acts of concealment which occurred after the central objectives of the conspiracy had been attained, may not be used to extend the duration of the conspiracy beyond the last overt act committed in furtherance of the conspiracy. Thus, in view of the foregoing, defendants contend that application of the Sentencing Guidelines would violate the *ex post facto* clause of the Constitution, as the conspiracy terminated prior to the effective date of the amendments effective November 1989, and November 1990.

 Upon consideration of the parties' arguments and applicable law, the court finds that defendants' motions should be denied. Generally, when determining what sentence to be imposed, the Sentencing Guidelines provide that defendants are to be sentenced in accordance with the Guidelines in effect at the time of the sentencing.

*See* 18 U.S.C. § 3553(a)(4) and (5) (1983). However, this rule is subject to constraints contained in the *ex post facto* clause of the Constitution of the United States of America. U.S. Const. art I, § 9, cl. 3. Thus, whenever, an amendment to the Sentencing Guidelines imposes a harsher penalty than that which would have been imposed at the time the offense was committed, the court must apply the earlier version. *See Miller v. Florida*, 482 U.S. 423, 429–30, 107 S.Ct. 2446, 2450–51, 96 L.Ed.2d 351 (1987); *United States v. Smith*, 930 F.2d 1450, 1452 n. 3 (10th Cir.), *cert. denied*, — U.S. —, 110 S.Ct. 1786, 108 L.Ed.2d 788 (1991); *United States v. Swanger*, 919 F.2d 94, 95 (8th Cir.1990); *United States v. McAllister*, 927 F.2d 136, 138 (3d Cir.1991); *United States v. Lam Kwong–Wah*, 924 F.2d 298, 304 (D.C.Cir.1991). In determining whether the imposition of a criminal law violates the *ex post facto* prohibition, two elements must be found. These elements are: the law must be retrospective, or in other words, applied to events occurring before its enactment, and the law must disadvantage the offender affected by it. *Miller v. Florida*, 482 U.S. at 430, 107 S.Ct. at 2451.

■ Upon consideration of the present set of facts, the court finds that the application of the Sentencing Guidelines, as amended in November 1989, and November 1990, does not violate the *ex post facto* clause. First, the court finds that the offenses to which defendants Cruce and Burger have pled guilty are offenses which occurred subsequent to the effective dates of the amended Guidelines in question. Specifically, the court finds that both defendants pled guilty to Count 1 of the Indictment which alleges:

> Commencing at least as early as 1984, the exact date being unknown to the grand jury, and **continuing until the return of this indictment** [January 10, 1991], defendants, THOMAS A. BURGER, SHERWOOD E. BLOUNT, JR., JAMES R. CRUCE, CATHY (nee ALLIN) CRUCE, THOMAS D. DUNN, JR., JOSEPH GROSZ and KIM A. WISE knowingly and unlawfully combined, conspired, confederated and agreed with each other.... (emphasis added).

Thus, defendants pled guilty to a crime which allegedly occurred subsequent to the effective dates of the November 1989, and November 1990.

■ Further, the court finds that defendants' assertion that there are no facts which support the continued existence of the conspiracy beyond the termination of their employment with Peoples Heritage is simply without merit. While it is true that the defendants were forced to resign from Peoples Heritage in November 1988, the court finds that the defendants continued their participation and ownership in the joint ventures, corporations, partnerships and property which was obtained with money illegally defrauded from Peoples Heritage. Further, their participation in these ventures continued unimpeded until the issuance of the Indictment. Thus, while defendants may not have been employed by Peoples Heritage after November 1988, they had not extricated themselves from the joint ventures, partnerships and other entities which were set up to defraud Peoples Heritage and which continued into existence beyond the date of their forced resignations.

■ Further, the court finds that the forced resignation of defendants does not amount to an affirmative withdrawal or disavowal of the conspiracy as contemplated by the law. As stated by the Tenth Circuit Court of Appeals, "[i]n order to withdraw from a conspiracy an individual must take affirmative action, either making a clean breast to the authorities or communicating his withdrawal in a manner reasonably calculated to reach his co-conspirators." *United States v. Fox*, 902 F.2d 1508, 1516 (10th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 199, 112 L.Ed.2d 161 (1990) (quoting *United States v. Parnell*, 581 F.2d 1374, 1384 (10th Cir.), *cert. denied*, 439 U.S. 1076, 99 S.Ct. 852, 59 L.Ed.2d 44 (1978)). Further, the burden of establishing withdrawal is on the defendants. *Fox*, 902 F.2d at 1516.

In this regard, the court finds that defendant Burger's consent decree to withdraw from his position with Peoples Heritage did

not amount to an affirmative withdrawal from the conspiracy. Specifically, the court finds that defendant Burger was effectively removed from Peoples Heritage by the Resolution Trust Corporation ("RTC") following an investigation which revealed numerous conflicts of interest on the part of defendant Burger. Such removal is not an affirmative disavowal of the conspiracy. Further, the court finds that although defendant Burger agreed to not continue his involvement with Peoples Heritage, he did not remove himself from his ownership and participation in the joint ventures and partnerships which had been set up to defraud People's Heritage and which remained under his control until the return of the Indictment. Thus, the court finds that defendant Burger has not carried his burden of proving that he had withdrawn from the conspiracy in November 1988.

▪ The court further finds that defendant Burger's statement that his role in the conspiracy terminated in November 1988, made in conjunction with his petition to enter a plea of guilty, does not limit the court to making such factual finding for purposes of sentencing defendant Burger. When determining whether to accept defendant Burger's petition, the court had to make a finding that a factual basis exists to find that the defendant committed the offense to which he has pled guilty. *United States v. Montoya-Camacho*, 644 F.2d 480, 485–486 (5th Cir.1981). Thus, in this case the court had to make a finding that a factual basis exists which would satisfy the four elements of a conspiracy, as specifically set forth in *United States v. Hines*, 696 F.2d 722, 733 (10th Cir.1982). These elements do not require the court to make a finding as to the duration of the conspiracy. Further, to allow a defendant to avoid the application of the amended guidelines by fashioning his plea would be to allow the defendant to amend the Indictment. Amendment of the Indictment may only be accomplished by resubmission to the grand jury. *Russell v. United States*, 369 U.S. 749, 769, 82 S.Ct. 1038, 1050, 8 L.Ed.2d 240 (1963).

▪ Further, because the defendant Burger was a participant in the overall conspiracy, his contention that he did not commit any overt acts after November 1988 is unavailing. As the Tenth Circuit held in *United States v. Williams*, 897 F.2d 1034, 1040 (10th Cir.), *cert. denied*, — U.S. —, 111 S.Ct. 2064, 114 L.Ed.2d 469 (1991) absent any affirmative withdrawal, a defendant remains a part of the ongoing criminal enterprise. Thus, because the court has found that the conspiracy continued in existence beyond the effective dates of the amended guidelines and that defendant Burger had not effectively withdrawn from the conspiracy, the court finds that application of the amended guidelines does not violate the *ex post facto* clause of the Constitution.[1]

Similarly, with respect to defendant Cruce, the court finds that Cruce has offered no evidence that he withdrew from the conspiracy in November 1988. Defendant Cruce simply rests on his assertion that no overt acts in furtherance of the conspiracy occurred after November 1988. For the above reasons previously stated in regard to defendant Burger, the court finds that application of the amended Guidelines is appropriate when sentencing defendant Cruce.[2] Accordingly, the court

---

**1.** The court further notes that application of the amended Guidelines does not violate the *ex post facto* clause because the sentence which may be properly imposed under the unamended Guidelines would be similar in duration. Under the 1987 Guidelines, the court can make an upward departure from the Guidelines upon finding that factors warranting such departure exist. *United States v. Fortenbury*, 917 F.2d 477, 478 (10th Cir.1990). The court finds that this case does present such factors. Thus, the court notes that the second requirement necessary to establish a violation of the *ex post facto* clause, *i.e.*, that the more recent law impose a harsher penalty than was available at the time the offense was committed, is not satisfied.

**2.** The court notes that the cases on which defendant relies to establish and limit the duration of the conspiracy are inapplicable. Specifically, the court finds that *Fiswick v. United States*, 329 U.S. 211, 217, 67 S.Ct. 224, 227, 91 L.Ed. 196 (1946) dealt with the admissibility of statements made by co-conspirators after their arrest. Further, the court finds that *Grunewald v. United States*, 353 U.S. 391, 77 S.Ct. 963, 1 L.Ed.2d 931

will deny defendant Cruce's motion to apply the 1987 Sentencing Guidelines.

## II. WITHDRAWAL OF GUILTY PLEAS

In the event that the court determines that the recent amendments to the Sentencing Guidelines are applicable, defendants Burger and Cruce have moved the court to allow the withdrawal of their guilty pleas.

▉▉▉ Rule 32(d) of the Federal Rules of Criminal Procedure provides that prior to sentencing, "the court may permit withdrawal of a plea upon a showing by the defendant of any fair and just reason." Whether to allow a defendant to withdraw a guilty plea is within this court's sound discretion. *United States v. Rhodes*, 913 F.2d 839, 845 (10th Cir.), *cert. denied*, — U.S. ——, 111 S.Ct. 1079, 112 L.Ed.2d 1184 (1991). Once a defendant has entered a guilty plea he has no right to withdraw it. *United States v. Hickok*, 907 F.2d 983, 985 (10th Cir.1990) (quoting *Barker v. United States*, 579 F.2d 1219, 1223 (10th Cir.1978)). Further, "the defendant bears the burden of demonstrating a 'fair and just reason' for withdrawal of his guilty plea." *Hickok*, 907 F.2d at 985. In determining whether a defendant has established a "fair and just reason" the court should consider the following factors:

(1) whether the defendant has asserted his innocence;

(2) whether withdrawal would prejudice the government;

(3) whether the defendant delayed in filing his motion;

(4) whether withdrawal would substantially inconvenience the court;

(5) whether close assistance of counsel was available to the defendant;

(6) whether the plea was knowing and voluntary; and

(7) whether the withdrawal would waste judicial resources.

*Rhodes*, 913 F.2d at 845.

▉▉▉ Upon consideration of the above factors, the court finds that defendants' motions should be denied. First, the

court finds that neither defendant has asserted his innocence. Rather, each defendant is upset with the severity of the sentence which has been recommended in the presentence investigation reports. Such a reason does not provide a "fair and just reason" for the withdrawal of a guilty plea. *See United States v. Michaelson*, 552 F.2d 472, 475 (2nd Cir.1977) (defendant's change of mind regarding his plea after his codefendants' trial and after his review of the presentence report did not warrant the granting of a motion to withdraw plea); *United States v. Marshall*, 510 F.2d 792, 795 (D.C.Cir.1975); *United States v. Needles*, 472 F.2d 652, 654 (2nd Cir.1973).

Second, the court finds that both defendants had close assistance of counsel prior to entering into their guilty pleas. Thus, this factor does not mitigate in favor of either defendant's motion to withdraw his plea.

Third, the court finds that withdrawal of their guilty pleas would prejudice the government significantly because both defendants would have to be tried. The facts of this case are extremely complicated and the defendants have delayed in moving to withdraw their pleas until completion of a five-week trial in which several codefendants were acquitted. Had defendants sought to withdraw their guilty pleas prior to the commencement of the trial of their codefendants, the government could have tried all of the indicted defendants at one time. Further, in this regard, the court finds that withdrawal of defendants' guilty pleas would be a substantial waste of judicial resources. Indeed, the court finds that because the defendants are primarily upset with their anticipated sentences, defendant may properly challenge the sentence ultimately imposed by this court through the appellate process.

Finally, the court further finds that defendants have offered no evidence to support their contention that their pleas were not entered into voluntarily in accordance with Fed.R.Crim.P. 11. Both defendants were apprised that they could be imposed

---

(1957) dealt with the issue of establishing that the overt acts in furtherance of the conspiracy

occurred within the statute of limitations period.

maximum sentences of five years per count, and a maximum fine of $250,000. Further, the court finds that the defendants were informed that the Guidelines would be applied. Finally, the court finds that the defendants were informed that they would not be allowed to withdraw their guilty pleas if they were dissatisfied with their sentences. Thus, the court finds no basis exists for the defendants' assertion that their pleas were not knowingly and voluntarily entered. Accordingly, having found no "fair and just reason" to allow the withdrawal of the defendants' guilty pleas, the court will deny their alternative motion to withdraw their pleas to Count I of the Indictment.

## III. AMOUNT OF RESTITUTION

Defendant Cruce has moved the court to limit any restitution order to those amounts attributable specifically to the conduct underlying his conviction.

■ In determining the amount of restitution, the court is to consider the amount of loss as result of the offense, the financial resources of the defendant, the defendant's earning capabilities, and other factors which the court finds appropriate. 18 U.S.C. § 3664(a). According to the United States Supreme Court, an order of restitution can only be based on the amount of injury suffered by the victim as a result of the criminal conduct for which the defendant has been convicted or has pled guilty. *Hughey v. United States*, 495 U.S. 411, 110 S.Ct. 1979, 1983–84, 109 L.Ed.2d 408 (1990). It is generally inappropriate to include in a restitution order injuries suffered by the defendant's acts that are separate from the particular offense for which the defendant was convicted, notwithstanding that the injury is related or of a similar scheme. *Hughey*, 110 S.Ct. at 1984.

■ In this case, the court finds that restitution may be properly based upon those losses which have resulted from defendant Cruce's conduct in Counts 1, 18, 19, and 20. Defendant Cruce has moved the court to limit its calculation of the loss to the RTC to those amounts specifically alleged in Counts 18, 19 and 20. The court finds that this limitation is simply inappropriate. The court may also consider those losses which are attributable to defendant Cruce's conduct on Count 1. Such conduct is not limited to that conduct described in Counts 18, 19 and 20. Accordingly, the court finds that losses which may be properly considered by the court would entail those suffered by the RTC as a result of the overall conspiracy alleged in Count 1. Further, in determining this loss, the court finds that 18 U.S.C. § 3664(d) allows the court to base this determination on findings contained in the presentence report or other testimony or evidence supported by a preponderance of the evidence. Thus, the court finds that defendant Cruce's motion to limit restitution to those specific amounts alleged in Counts 18, 19, and 20 must be denied.[3]

IT IS BY THE COURT THEREFORE ORDERED that defendant Burger's motion to sentence Burger under the Sentencing Guidelines effective in December 1988 or, in the alternative, to allow the defendant to withdraw his plea is denied.

IT IS FURTHER ORDERED that defendant Cruce's conditional motion to withdraw plea of guilty and motion for determination that the 1987 Sentencing Guidelines govern the sentencing of defendant rather than the 1989 and 1990 amendments to said guidelines and that restitution is limited to the counts pled to is denied.

---

**3.** The court further notes that defendant Cruce's reliance upon *United States v. Sharp*, 927 F.2d 1083 (9th Cir.1991) is misplaced. This decision has been withdrawn by the Ninth Circuit Court of Appeals, and thus, it may not be properly relied upon.